UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES PINES, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : No. 3:10cv866 (MRK) |
| | : |
| MICHAEL BAILEY, | : |
| | : |
| Defendant. | : |

**MEMORANDUM OF DECISION**

On April 29, 2008, Plaintiff James Pines called 911 to report that his soon-to-be-ex-wife, Elizabeth Pines, had pointed a gun at him through the door of their house. Upon arrival, police found a loaded handgun lying on the back of an upstairs toilet. A loaded shotgun was also found in the couple's house, where the Pines's two children were sleeping. On September 8, Mr. Pines was arrested for Reckless Endangerment in the First Degree. The affidavit that led to the warrant for his arrest was prepared by Defendant Michael Bailey of the Enfield Police Department.

Proceeding *pro se* and invoking 42 U.S.C. § 1983 and Connecticut state law, Mr. Pines brings malicious prosecution and intentional and negligent infliction of emotional distress claims against Detective Bailey, who he claims made reckless errors and omissions in preparing the warrant affidavit. Detective Bailey insists that he had probable cause to arrest Mr. Pines and thus is entitled to summary judgment as to all of Mr. Pines's claims. As described below, the Court finds that questions of fact remain as to whether a more accurate warrant affidavit would have supported a finding of probable cause, whether malice was involved, and whether Detective Bailey negligently inflicted emotional distress. Detective Bailey's Motion for Summary Judgment [doc. # 40] is therefore DENIED IN PART and GRANTED IN PART.

1

## I.

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record, *see* Fed. R. Civ. P. 56(c), and it must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).

The moving party—here, Detective Bailey—bears the burden of demonstrating that no genuine issue exists as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where no rational finder of fact could find in

favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Brown*, 654 F.3d at 358 (quotation marks omitted).

**II.**

Few of the facts that the Court finds material in this case are disputed. Where they are, the Court has considered them in the light most favorable to Mr. Pines, the non-moving party. *See Holcomb*, 521 F.3d at 137.

On the night of April 29, 2008, Mr. Pines was trying to retrieve some belongings— including a toiletry bag containing a pistol—from the house he had shared with his wife before their separation. As their two children were asleep upstairs, Ms. Pines locked Mr. Pines out of the house and brandished a pistol at him through the door window. Mr. Pines left the house and called 911.

When an Enfield police officer responded, Mr. Pines explained what had happened and described to the officer the various guns he kept in the house. Searching inside the house for the children, the police found a loaded handgun lying on top of the toilet, next to a toiletry bag, in an upstairs bathroom. They also found a loaded twelve-gauge shotgun wrapped in a blanket on the floor in an upstairs bedroom. Mr. Pines owns both of these weapons. Ms. Pines, who swore to officers that she did not know where the guns in the house were located, was arrested for breach of peace and first degree reckless endangerment. The police left Mr. Pines's children in his care.

At her arraignment the following day, Ms. Pines was ordered to disclose the location of an additional weapon. Once she did, Mr. Pines located the weapon and turned it over to the police that afternoon.

Detective Bailey was not among the officers present at the Pines home on April 29. Nor did he ever interview Mr. Pines about that evening's events. Instead, he reviewed the complete police report for the case, including the statement filed by Officer Nolan, the officer who had found the loaded weapons during his search of the house. From this, Detective Bailey came to believe that Mr. Pines had violated Section 53a-63 of the Connecticut General Statutes, which holds a person "guilty of reckless endangerment in the first degree when, with extreme indifference to human life, he recklessly engages in conduct which creates a risk of serious physical injury to another person." Conn. Gen. Stat. § 53a-63(a). ("Recklessness," according to Connecticut law, requires that one "is aware of and consciously disregards a substantial and unjustifiable risk. . . ." Conn. Gen. Stat. § 53a-3(13).)

On August 29, 2008, Detective Bailey applied for a warrant for Mr. Pines's arrest, which an Assistant State's Attorney approved and a judge of the Connecticut Superior Court issued solely on the basis of Detective Bailey's affidavit. Mr. Pines was arrested on September 8, 2008. On November 3, 2009, Superior Court Judge Richard W. Dyer dismissed not only the reckless endangerment charge against Mr. Pines, but also two subsequently filed felony charges—improper storage of a firearm and risk of injury to a minor.

### III.

To prevail on a § 1983 claim for malicious prosecution, Mr. Pines must show that his rights under the Fourth Amendment were violated and establish the elements of a malicious prosecution claim under state law. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002). Mr. Pines's arrest clearly constitutes a "seizure" for the purposes of the Fourth Amendment. However, to establish a malicious prosecution claim under Connecticut law, Mr. Pines must prove: (1) that Detective Bailey initiated or continued criminal proceedings against Mr. Pines;

(2) that the criminal proceeding terminated in Mr. Pines' favor; (3) that Detective Bailey acted without probable cause; (4) and that Detective Bailey acted with malice. *See McHale v. W.B.S. Corp.*, 187 Conn. 444, 447 (1982).

The present motion challenges Mr. Pines only on the third and fourth of these elements. Detective Bailey argues that he had probable cause—or, for qualified immunity's sake, "arguable probable cause," *see Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010)—and, further, that Mr. Pines has not produced any evidence of malice. However, the Second Circuit has held that "lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997); *see also Falls Church Grp. Ltd. v. Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 94 (2007) ("Malice may be inferred from lack of probable cause."); *Zenik v. O'Brien*, 137 Conn. 592, 596-97 (1951). Thus, summary judgment in this case really comes down to whether Detective Bailey had probable cause to seek the warrant or whether he instead obtained the warrant through false or incomplete statements.

Mr. Pines has a "right to be free from an arrest based on a warrant that would not have been issued if the officer seeking the warrant had disclosed to the issuing magistrate information within the officer's knowledge that negated probable cause." *Loria v. Gorman*, 306 F.3d 1271, 1289 (2d Cir. 2002). To show that this right was violated, Mr. Pines "must demonstrate both that [the defendant] intentionally or recklessly made false statements in the warrant application and that those statements were necessary to a finding of probable cause." *Id.*

> In the Second Circuit, courts
>
> assess the materiality of alleged misstatements in a warrant application by putting aside allegedly false material, supplying any omitted information, and then determining whether the contents of the "corrected affidavit" would have supported a finding of probable cause. If the corrected affidavit would be

> sufficient to support probable cause as a matter of law, no constitutional right was violated and the defendant officer is entitled to summary judgment.

*Id.* (quotation marks, alterations, and citations omitted).

Detective Bailey argues that "the only information necessary for a finding of probable cause pertains to the condition of the weapons when discovered (loaded and unsecured); the location (in areas accessible to the children); and the fact that two young children [were] present in the home at the time that the weapons were discovered." Def.'s Mem. of Law [doc. # 42] at 17-18. Because these facts are not in dispute, Detective Bailey claims that probable cause must have been indisputably present as well.

Unfortunately for Detective Bailey, the three facts above are not "the *only* information" necessary to find probable cause for a reckless endangerment charge. Because recklessness is a necessary element, *see* Conn. Gen. Stat. § 53a-63(a), awareness and conscious disregard of the risk in question are also necessary, *see* Conn. Gen. Stat. § 53a-3(13). The problem with Detective Bailey's argument is that it leaves out the fourth piece of information that was necessary for a finding of probable cause: Mr. Pines's awareness and disregard of the fact that the weapons in his house were in the condition and location that they turned out to be.

It is on just this point that errors in Detective Bailey's warrant affidavit may have supported the Superior Court's finding of probable cause while a corrected affidavit would not have. In the affidavit accompanying his warrant application, Detective Bailey stated: (1) that when police arrived, "James Pines admitted that he had a toiletry bag in the upstairs bathroom which contained a loaded .32 cal pistol," Def.'s Ex. C [doc. # 43-3] ("hereinafter Application Aff.") ¶ 4; (2) that police searching the house had discovered "a loaded .32 cal pistol on the back of a toilet in plain view," *id.* ¶ 5; and (3) that his belief in probable cause stemmed from "James Pines admitting he had a handgun in the toiletry bag on the back of the toilet and the officers

6

discovery of the loaded handgun out in the open and accessible to the children on the back of the toilet," *id.* ¶ 9. Detective Bailey did *not* include the information that (4) the altercation between Mr. and Ms. Pines occurred as Mr. Pines was trying to enter the house to retrieve his toiletry bag with a pistol inside. *See* Pl.'s Ex. A3 [doc. # 48] (Report of Officer Owen). In his affidavit, Detective Bailey said merely that Mr. Pines had "wanted to go back inside to get some belongings." Application Aff. ¶ 3.

Together, the inaccuracies in (1) and (3) and the omission of (4) paint a misleading picture of Mr. Pines's awareness and disregard of the risk posed by his guns. The police report on which Detective Bailey based his affidavit did not say that Mr. Pines admitted to having a *loaded* pistol in his toiletry bag. In fact, Mr. Pines insisted during his deposition that he had told officers that the gun was unloaded and had a trigger lock. Def.'s Ex. A [doc. 43-1] (Pines Dep.) at 110. Mr. Pines also justifiably takes issue with the word "admitted" in (1), given that he was the one who voluntarily sought the police's help and who told them about the guns inside his house. To call this an "admission" is to suggest that information about the gun had been elicited rather than freely shared.

As to (3), Mr. Pines said at his deposition—though this is not reflected in the contemporaneous police report—that he had told police that his handgun was in a toiletry bag on the top shelf behind the bathroom door. While (1) remains vague about the location of the toiletry bag within the bathroom, (3) clearly states that Mr. Pines admitted that the gun was on the back of the toilet. There is no support for this in the police report from the night of the incident.

Adding (1) and (3) together, readers of Detective Bailey's affidavit are led to believe that Mr. Pines admitted to leaving a loaded pistol on the back of a toilet in a home where children

were sleeping. This is basically to have admitted to reckless endangerment. It is surely to have admitted to the awareness that recklessness requires. Yet the crucial "admissions" in (1) and (3) have no basis in any of the primary sources on which Detective Bailey said he relied.

Worse, by leaving out the crucial bit of information in (4)—the fact that Mr. Pines had tried to enter his house to retrieve the gun—Detective Bailey bolsters the impression that Mr. Pines consciously disregarded the threat his gun posed. Including that crucial detail might well have convinced readers of Detective Bailey's affidavit that Mr. Pines was not reckless at all. In fact, given that detail, readers might conclude that Mr. Pines had tried to prevent the very risk he was said to have consciously disregarded.

In sum, a reasonable juror could easily find that the errors and omissions in the warrant affidavit, if corrected, would have led to a different probable cause determination—in fact, one about which officers of reasonable competence could not have disagreed. *See Golino v. City of New Haven*, 950 F.2d 864, 870-1 (2d Cir. 1991) (discussing the standard for qualified immunity under § 1983); *see also id.* at 872 ("The weight that a neutral magistrate would likely have given the . . . information that was concealed or misrepresented, is not a legal question but rather is a question to be resolved by the finder of fact."). For that reason, Detective Bailey's summary judgment motion—which is premised on the fact that he acted with probable cause—must be denied as to Mr. Pines's malicious prosecution claim.

**IV.**

Mr. Pines also brings negligent and intentional infliction of emotional distress claims under Connecticut state law.

**A.**

A claim of negligent infliction of emotional distress requires a showing that "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003).

At first glance, it may seem that Mr. Pines has not alleged either illness or bodily harm resulting from his distress. In an affidavit, he states that the

> experience of facing up to 14 years in prison for a crime that I did not commit, the financial los[s]es, losing my career which took years to build, the mental stress that remains with me every day, and the hardship of losing my children to my unstable ex-wife is incredible to bear.

Pl.'s Ex. A5 [doc. # 48] (James Pines Aff.) ¶ 11. While illness or bodily harm is not explicitly mentioned here, Mr. Pines's distress is not unlike that of the plaintiff in *Carrol v. Allstate Insurance* who testified of the "excruciatingly painful" experience of being accused by an insurance inspector of arson. 262 Conn. at 446. The Connecticut Supreme Court held that a jury need only find that the distress *might* result in illness or bodily harm. *Id.* at 448. As the Supreme Court had previously held, "there is no logical reason for making a distinction, for purposes of determining liability, between those cases where the emotional distress results in bodily injury and those cases where there is emotional distress only." *Montinieri v. S. New England Tel. Co.*, 175 Conn. 337, 344 (1978). In any case, Detective Bailey has not raised this argument with any specificity, so the Court sees no reason not to let a jury decide whether the third prong of the negligent infliction test has been met here.

The argument Detective Bailey does press is that, as a municipal employee carrying out a discretionary act, he is immune from the negligence claim. *See Gordon v. Bridgeport Hous.*

*Auth.*, 208 Conn. 161, 183 (1988) ("[A] finding that the defendants' actions were discretionary and not ministerial would preclude liability."); *id.* at 179 ("[T]he great weight of authority [holds] that the operation of a police department is a discretionary governmental function."). Mr. Pines astutely responds by pointing to Connecticut's three recognized exceptions to immunity:

> [F]irst, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm; second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence.

*Evon v. Andrews*, 211 Conn. 501, 505 (1989).

Other judges in this District have concluded that Connecticut courts extend the "identifiable person–imminent harm exception" only to situations in which the imminent harm involves "physical harm or personal danger, not the results of a wrongful arrest." *Chipperini v. Crandall*, 253 F. Supp. 2d 301, 312 (D. Conn. 2003); *see also Milardo v. City of Middletown*, No. 3:06CV01071, 2009 WL 801614, at *9 (D. Conn. Mar. 25, 2009). However, in *Chipperini*, Judge Droney candidly acknowledged that the reasoning in the decisions he relied upon was "not entirely clear." 253 F. Supp. 2d. at 312. And in the years since his decision was written, the Connecticut Supreme Court has explicitly entertained an identifiable person–imminent harm claim involving what it called a "nonphysical risk of harm." *Doe v. Petersen*, 279 Conn. 607, 618 n.10 (2006). In *Petersen*, the Supreme Court ultimately found the defendant immune because the harm—"terror and long term psychological injury," *id.* at 611—had not been apparent. The Court seemed untroubled by the fact that the harm was nonphysical. *See id.* at 618 n.10. What the Supreme Court called the "core requirements of the 'imminent harm' test"—"(1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm," *id.*—not only include nothing about

10

physical harm, but seem to apply perfectly well to the case at hand. The Court finds that Detective Bailey's immunity claim is therefore subject to the identifiable victim–imminent harm exception.

Alternatively, were a jury to find that Mr. Pines satisfied the malice element of his malicious prosecution claim, this would be "sufficient to defeat a defense of qualified immunity under [Connecticut] common law" under the third of the exceptions listed above also. *Mulligan v. Rioux*, 229 Conn. 716, 732 (1994). For these reasons, the Court will allow Mr. Pines to proceed with his negligent infliction of emotional distress claim.

## B.

To succeed on his intentional infliction claim, Mr. Pines must show:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

*Appleton v. Bd. of Educ.*, 254 Conn. 205, 210 (2000). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." *Id.*

As a matter of law, the Court cannot find that the omissions and errors in Detective Bailey's affidavit—important as they may have proved to be—constitute the kind of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* at 211. As in *Carrol v. Allstate Insurance Co.*, it may be the case that "the defendant did not conduct a thorough or reasoned investigation." 262 Conn. at 444. But the Connecticut Supreme Court found in *Carrol* that "[a]s distressing as this . . . may have been to

the plaintiff, . . . it simply was not so atrocious as to trigger liability for *intentional* infliction of emotional distress." *Id.*

Thus, the Court GRANTS Detective Bailey's Motion for Summary Judgment [doc. # 40] as to Mr. Pines's intentional infliction of emotional distress claim. As previously stated, Detective Bailey's Motion is DENIED as to Mr. Pines's claims of malicious prosecution under § 1983 and negligent infliction of emotional distress under Connecticut state law. In accordance with the Court's Amended Case Management Order [doc. # 37], the parties shall submit a Joint Trial Memorandum on August 20, 2012.

**IT IS SO ORDERED.**

　　/s/  Mark R. Kravitz　　　　
United States District Judge

**Dated at New Haven, Connecticut: July 19, 2012.**